UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VICENTE TECUM PASTOR, ) | Case No. 4:25-cv-02761 |
| ) | |
| Petitioner, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | Magistrate Judge |
| ) | Carmen E. Henderson |
| DIRECTOR OF DETROIT FIELD ) | |
| OFFICE, U.S. IMMIGRATION AND ) | |
| CUSTOMS ENFORCEMENT, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| ) | |

**OPINION AND ORDER**

On December 22, 2025, Petitioner Vicente Tecum Pastor, a Mayan indigenous citizen of Guatemala illegally present in the United States and in custody without bond pending removal proceedings, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the Court **DISMISSES** the petition **WITHOUT PREJUDICE**. Further, the Court **GRANTS** a certificate of appealability.

**STATEMENT OF FACTS**

According to Petitioner, Mr. Tecum Pastor entered the United States sometime in 2020 and has no criminal record. (ECF No. 1, ¶¶ 29 & 31, PageID #9.) The Immigration Court recently denied his petition for asylum, which Petitioner indicated he appealed to the Board of Immigration Appeals. (*Id.*, ¶ 30, PageID #9.) Mr. Tecum Pastor was detained on June 12, 2025 and remains detained at a jail in Youngstown, Ohio. (*Id.*, ¶ 2, PageID #2; ECF No. 1-2.) Petitioner alleges that Mr. Tecum Pastor

has been detained for 193 days as of the filing of the petition. (ECF No. 1, ¶ 2, PageID #2.)

Following a hearing, on July 25, 2025, the Immigration Court denied Mr. Tecum Pastor's request for bond, determining that it lacked jurisdiction pursuant to Section 235(b) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b), and *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025). (*Id.*, ¶¶ 32–33, PageID #9–10; ECF No. 1-3.) On August 25, 2025, Mr. Tecum Pastor appealed the Immigration Court's dismissal of his removal proceedings to the Board of Immigration Appeals. (ECF No. 1, ¶ 32, PageID #10.) The Immigration Court denied Mr. Tecum Pastor's motion for bond redetermination on similar grounds on August 28, 2025. (ECF No. 1-4.) The Board of Immigration Appeals has yet to rule on Mr. Tecum Pastor's appeal. (ECF No. 1, ¶ 35, PageID #11.)

## STATEMENT OF THE CASE

On December 22, 2025, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) He alleges that his detention violates: (1) the Due Process Clause of the Fifth Amendment; (2) detention provisions of the Immigration and Nationality Act; and (3) federal regulations regarding interpretation and application of the Act. (*Id.*, ¶¶ 63–72. PageID #19–21.) Specifically, Petitioner contends that Mr. Tecum Pastor "was subjected to mandatory detention flowing from an arbitrary and capricious overreach by the BIA in *Matter of Q. Li* and *Matter of Yajure Hurtado*" and that these decisions "violate Petitioner's Fifth Amendment Due Process rights." (*Id.*, ¶¶ 65–66, PageID #19.) Further,

2

Petitioner claims that Mr. Tecum Pastor's detention "violates 8 U.S.C. § 1225(b) and 28 C.F.R. § 68.36." (*Id.*, ¶ 72, PageID #21.)

## ANALYSIS

Under 28 U.S.C. § 2243, a court shall forthwith issue a writ or order the respondent to show cause why a writ should not issue, "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. This statute requires an initial screening of a petition. *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). At this stage of the proceedings, a court accepts as true the allegations in the petition and construes them in favor of the petitioner. *Id.* "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." Rule 4 of the Rules Governing Section 2254 Cases (applicable to petitions under Section 2241 through Rule 1(b)).

### I. Jurisdiction

Section 2241(c)(3) extends the availability of the writ of habeas corpus to persons "in custody in violation of the Constitution or law or treaties of the United States." 8 U.S.C. § 1252(a)(2) provides that no court has jurisdiction to review any immigration matter except as provided by statute: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review" immigration cases.

As relevant here, judicial review is available in two circumstances. First, a final order of removal is subject to judicial review by "the court of appeals for the

3

judicial circuit in which the immigration judge completed the proceedings," *not* the district court. 8 U.S.C. § 1252(b)(2); *see also id.* § 1252(b)(9). Second, 8 U.S.C. § 1252(a)(2)(D) preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue. In that case, however, Congress significantly limited judicial review and the ability of courts to engage in fact-finding:

> no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order [a final order of removal] or such questions of law or fact [those involving interpretation and application of statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States].

*Id.* § 1252(b)(9). This statute encompasses challenges to the decision to seek removal and the decision to detain an alien in the first place. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Significantly, Congress specifically divested courts of jurisdiction to review bond determinations and other discretionary determinations pending removal. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

## II. Split of Authority in the Inferior Courts

Against this background, federal district courts have taken competing approaches to whether petitioners are entitled to a bond hearing pending removal under this statutory framework. The majority of courts agree with Petitioner that such a hearing is warranted. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *9 (D. Mass. July 7, 2025); *Paredes Padillia v. Galovich, et al.*, No. 25-cv-863, 2025 WL 3251446, at *6 (W.D. Wis. Nov. 21, 2025); *Diaz-Villatoro v. Larose, et al.*, No. 25-cv-

4

3087, 2025 WL 3251377, at *4 (S.D. Cal. Nov. 21, 2025). However, at least three courts have taken a contrary position, agreeing with the United States's reading of the statute. *See, e.g.*, *Mejia Olalde v. Noem*, No. 1:25-cv-00168, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025).

In the Court's view, both approaches are mistaken. The statutory framework provides a limited role for district courts to review a habeas petition in the immigration context not concerning a final order of removal. 8 U.S.C. § 1252(a)(2)(D). That is, Section 1252 preserves the ability of district courts to review a petition for a writ of habeas corpus regarding a constitutional issue. *Id.* For example, such claims might challenge the conditions of confinement or what amounts to indefinite detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (recognizing the serious constitutional concerns of indefinite detention following a final order of removal); *but see Jennings*, 583 U.S. at 297 (finding no statutory right to periodic bond hearings for aliens detained during the pendency of removal proceedings).

Outside of such limited and narrow constitutional claims, which Petitioner does not raise, other constitutional challenges quickly implicate and often become entwined with interpretation and implementation of the statutory framework and its associated procedures. Such is the case with Petitioner's Fifth Amendment due process claim. (ECF No. 1, ¶¶ 63–69, PageID #19–20.) In the immigration context, Congress has broad discretion to determine what process is due. *See, e.g. Department*

5

*of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *Reno v. Flores*, 507 U.S. 292, 309 (1993). Put another way, a constitutional challenge to detention pending removal and entitlement to a bond hearing pending removal collapse into analysis of the statutory and regulatory regime—whether, for example, Section 1226(a) entitles an alien to bond pending removal or whether Section 1225(b) authorizes the government to detain an alien pending removal. Congress has made clear that district courts lack the jurisdiction to make such determinations, even on a habeas petition under Section 2241. As the Supreme Court has long recognized, these statutory provisions aim "at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the[ir] theme." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999).

Given the narrow space where a district court may exercise jurisdiction, prudential principles of exhaustion counsel that a petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus. Because of the expertise that the Board of Immigration Appeals and the immigration courts more generally have in the statutory and administrative regimes governing the admission and removal of foreigners, "'many of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance." *Ba v. Director of Detroit Field Off.*, No. 4:25-cv-02208, 2025 WL 2977712, at *3 (N.D. Ohio Oct. 22, 2025) (quoting *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-01621, 2025 WL 2444114, at *11 (N.D. Ohio Aug. 25, 2025)); *see also Beharry v. Ashcroft*, 329 F.3d 51,

62 (2d Cir. 2003) (discussing the benefits of limiting judicial interference in agency affairs in the immigration context).

### III. Application

The Court applies the foregoing framework to Mr. Tecum Pastor's petition. (ECF No. 1.)

### III.A. Exhaustion

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the [habeas] petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). In *Leonardo,* the petitioner pursued habeas review of the Immigration Court's adverse bond determination before he appealed to the Board of Immigration Appeals. *Id.* The Ninth Circuit determined that filing a habeas petition in federal district court was improper because the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id.* (citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003)). The Sixth Circuit has endorsed this procedure for challenging bond determinations, albeit in a short, unpublished order. *See Rabi v. Sessions*, No. 19-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160); *see also Hernandez Torrealba*, 2025 WL 2444114, at *8 (applying the Ninth Circuit's test for prudential exhaustion). Previously, the Court has done so as well. *See Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Laguna Espinoza v. Director of Detroit Field Off., U.S. Immigr. &*

7

*Customs Enf't*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025); *Ba*, 2025 WL 2977712, at *2.

In this case, Mr. Tecum Pastor appealed the Immigration Court's dismissal of his removal proceedings to the Board of Immigration Appeals on August 25, 2025. (ECF No. 1, ¶ 32, PageID #10.) The Board of Immigration Appeals has yet to rule on Mr. Tecum Pastor's appeal. (*Id.*, ¶ 35, PageID #11.) As in *Leonardo*, 646 F.3d at 1160, prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus. In the petition, count two alleges violations of 8 U.S.C. §§ 1225(b) and 1226(a) and their implementing regulations. (ECF No. 1, ¶¶ 70–72, PageID #20–21.) Though count one is styled as a Fifth Amendment due process claim, it too presents claims about the statute and its associated procedures. (*Id.*, ¶¶ 63–69, PageID #19–20.)

Further, Petitioner seeks review of the application and interpretation of *Matter of Q. Li*, 26 I&N Dec. 66 (BIA 2020), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (*Id.*, ¶¶ 36–57, 65, PageID #11–19.) In other words, any determination regarding detention here turns on interpretation and application of the governing removal regime. In the first instance, such review should proceed before the Board of Immigration Appeals to "apply its experience and expertise without judicial interference." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (abrogated on other grounds); *see also Rojas-Garcia* , 39 F.3d at 819 (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a

8

habeas petition when those claims are reviewable by the BIA on appeal"); *Monroy Villalta*, 794 F. Supp. 3d at 531; *Laguna Espinoza*, 2025 WL 2878173, at *2; *Ba*, 2025 WL 2977712, at *2.

### III.B. Futility

Petitioner argues that an appeal to the Board of Immigration Appeals "would be futile in light of *Matter of Yajure Hurtado*." (ECF No. 1, ¶ 4, PageID #2.) To support this argument, he claims that the Board had "predetermined the issue before it in cases that are legally identical." (*Id.*) But courts in this Circuit have determined that even where there is a "high probability of denial" of a petitioner's appeal of an Immigration Judge's bond decision, such a probability "does not weigh in favor of waiving exhaustion." *Hernandez Torrealba*, 2025 WL 2444114, at *11.

In *Hernandez Torrealba*, the petitioner sought relief from the exhaustion requirement based on a decision of the Board of Immigration Appeals affirming the denial of bond. But the court was "not certain how the BIA will rule on Petitioner's appeal given the particular circumstances of her case, and it would be presumptuous of this Court to simply assume that the BIA will rule against Petitioner." *Id.* So too here. Petitioner provides little relevant background of Mr. Tecum Pastor's circumstances aside from the fact that he has been in the United States since 2020 and has no criminal record. (ECF No. 1, ¶¶ 29 & 31, PageID #9.) Without more, the Court cannot determine whether the factual circumstances in both *Matter of Q. Li* and *Matter of Yajure Hurtado* are distinct from this case in certain respects. In *Matter of Q. Li*, the alien "crossed the southern border of the United States without being inspected and admitted or paroled." 29 I&N Dec. 66, at *67. Further, Interpol

9

issued a Red Notice for forgery and human smuggling crimes. *Id.* In *Matter of Yajure Hurtado*, the alien "crossed the border into the United States without inspection" in 2022 and was granted temporary protected status in 2024. 29 I&N Dec. 216, at *216.

As previously discussed, "'many of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance.'" *Hernandez Torrealba*, 2025 WL 2444114, at *11 (quoting *Beharry*, 329 F.3d at 62). Indeed, courts outside this Circuit acknowledge that the purposes of requiring exhaustion in the immigration context "include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry*, 329 F.3d at 62 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)). In any event, the Court has no jurisdiction to review the decisions of the Board of Immigration Appeals in *Li* or *Hurtado*. That authority rests, if anywhere, with the Sixth Circuit. For these reasons, the Court cannot say that exhaustion is futile or a waste of time or that prudential reasons apply for excusing it.

### III.C. Nationwide Class

Finally, Petitioner argues that Respondents hold Petitioner without a bond hearing in "violation of binding federal District Court Precedent." (ECF No. 1, PageID #18.) Specifically, Petitioner argues that the Central District of California issued an order in *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), that granted declaratory relief to a nationwide class of noncitizens, "holding that the government is unlawfully subjecting them to

10

mandatory no-bond detention and that class members are eligible for release on bond under the immigration laws." (ECF No. 1, ¶¶ 58–59, PageID #18.) Pursuant to "the Court's order, class members should be able to request a bond hearing in immigration court before an immigration judge." (*Id.*, ¶ 59, PageID #18.) This case began with the filing of a habeas petition. *See Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 2670875, at *1 (C.D. Cal. July 28, 2025).

"[I]t is doubtful that class relief may be obtained in a habeas proceeding." *A.A.R.P. v. Trump*, 606 U.S. 91, 107 (2025) (Alito, J., dissenting). The Supreme Court has "never so held, and it is highly questionable whether it is permitted." *Id.* "[T]he class action device is uniquely 'ill-suited' for habeas proceedings . . . which often turn on individualized and fact specific determinations regarding the confinement of a specific prisoner." *Id.* at 109 (quoting *Harris v. Nelson*, 394 U.S. 286, 296 (1969)). Although the Supreme Court has addressed class challenges to "vindicate notice rights" under the Alien Enemies Act seeking habeas relief, it has not determined whether such relief is appropriate in any other context. *Id.* at 97 n.1. The Court doubts it is and fails to see how the Central District can issue a nationwide class of habeas petitioners under Rule 23(b)(2). After all, courts issue writs of habeas corpus to the person having custody over a petitioner. 28 U.S.C. § 2242. And the warden having custody over Mr. Tecum Pastor was not before the Central District of California.

In any event, the Court is not bound by the Central District of California's ruling and it declines to honor its approach or afford it any persuasive authority. "A

11

decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).  Petitioner claims that he "is entitled to a bond hearing as a member of this class." (ECF No. 1, ¶ 62, PageID #19.) But even Petitioner does not believe that argument.  If he did, then his remedy lies in the Central District of California, and he would have sought relief there.  His decision not to do so speaks volumes about the legal validity of that class certification order.

\*     \*     \*

For these reasons, the Court determines that Petitioner should pursue this matter before the Board of Immigration Appeals.  Because the petition makes no mention of a stay and does not demonstrate grounds for excusing exhaustion, the Court **DISMISSES** the petition **WITHOUT PREJUDICE**.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding.  28 U.S.C. § 2253(c)(1).  Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be

eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Because of an absence of controlling precedent in this Circuit—or, so far as the Court can tell, any circuit—on the proper procedure on the facts and circumstances presented, the Court acknowledges that reasonable jurists may disagree with the application of prudential exhaustion. For these reasons, the Court **GRANTS** a certificate of appealability on count one of the petition.

In doing so, the Court expresses one grave reservation. Over the past several months, the Court has resolved numerous habeas petitions like this one raising nearly identical arguments. *See, e.g.*, *Monroy Villalta*, 794 F. Supp. 3d at 531; *Laguna Espinoza*, 2025 WL 2878173, at *4; *Ba*, 2025 WL 2977712, at *3. Although the Court granted a certificate of appealability in these and other cases, not one petitioner has pursued an appeal. In any given case here or there, any number of litigating decisions might explain such a decision. But over the run of cases that the Court has decided—or that have come before the district courts more broadly—such innocent explanations fail to hold up. These circumstances provide the Court with serious doubt that the lawyers filing these petitions are doing so in good faith.

Whatever one thinks about the merits of the competing approaches in the inferior courts—whether one agrees with what has become the majority approach that a district court may order a bond hearing, whether the government has the better of the argument that it may lawfully deny such an opportunity, or whether the jurisdictional limits placed on district courts in the field of immigration require

13

caution and counsel requiring prudential exhaustion—the judiciary would benefit from appellate review and consideration of these issues. Failure to appeal deprives the inferior courts of much needed guidance and uniformity that sows doubt and instability to the detriment of the rule of law with no promise of judicial resolution at the Supreme Court.

Accordingly, if no appeal is taken in this case, the Court will hold a hearing to inquire into the reasonable good faith basis consistent with Rule 11 for failing to file a notice of appeal.

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** the petition for a writ of habeas corpus **WITHOUT PREJUDICE**. (ECF No. 1.) Further, the Court **GRANTS** a certificate of appealability on count one of the petition. Accordingly, Petitioner's motion to show cause is **DENIED AS MOOT**. (ECF No. 2.)

**SO ORDERED.**

Dated: December 24, 2025

                J. Philip Calabrese
                United States District Judge
                Northern District of Ohio